OPINION OF THE COURT
Helen Freedman, J.
INTRODUCTION
In the context of motions to dismiss and strike claims for injuries allegedly caused by exposure to asbestos products, this court is called upon to deal with the interplay of the various Statutes of Limitations now applicable to toxic tort claims and to determine whether the "second-injury rule” shall apply to the asbestos litigation now burgeoning in New York.
Prior to 1986, causes of action accrued at the time of exposure to a harmful substance despite the fact that manifestation of the injury often did not occur until well after the Statute of Limitations had expired. (Schmidt v Merchants Desp. Transp. Co., 270 NY 287 [1936].) In 1986, two statutory changes were enacted. First, Laws of 1986 (ch 682, § 4) (known as the Toxic Tort Revival Statute) revived previously time-barred claims for harm caused by five substances, including asbestos, for actions brought during a one-year period, July 30, 1986-July 30, 1987 (the window period). Second, CPLR 214-c substituted the date of discovery of the injury as the date from which to compute the three-year time period for commencing an action for cases in which discovery occurred after July 1, 1986.
Plaintiff’s decedent, John Wakshinsky, commenced a lawsuit to recover for asbestos-related injuries in July 1987 during the window period. The alleged exposure to asbestos fibers occurred from 1949-1953 when decedent, then employed as a carpenter, sprayed asbestos into structural surfaces to enhance fireproofing qualities, accoustical absorption and thermal insulation.
At the time the lawsuit was commenced, Wakshinsky had been suffering from asbestosis for some 35 years but had no other manifestations of asbestos-related disease. In November of 1987, he was diagnosed as suffering from peritoneal mesothelioma, an extremely lethal form of asbestos-related cancer affecting the abdominal lining. He died on January 1, 1988.
*913 In 1989 plaintiff, administratrix of the estate, attempted to serve an amended complaint to include not only the new injuries but additional defendants, Asbestospray Corporation (Asbestospray), Asbestos Products Manufacturing Corp. (APM), Asbestos Corporation of America (ACOA), Dana Corporation (Dana), and to add allegations of successor liability against four other defendants, H. & A. Construction Corporation (H & A), Spraycraft Corporation (Spraycraft), National Gypsum Company (National) and Armstrong World Industries, Inc. (Armstrong). Asbestospray, APM, ACOA and Dana move to dismiss the amended complaints against them as untimely and H & A, Spraycraft, National and Armstrong move for an order striking the allegations of successor liability as new matter not raised in the original complaint.[1]
CLAIMS
Since the first complaint was filed pursuant to the Toxic Tort Revival Statute, the newly identified defendants claim that it is time barred as to them. They further claim that CPLR 214-c (6) bars plaintiff from taking advantage of both the Revival Statute and the new discovery rule, CPLR 214-c, in the same suit. Defendants raise the same Statute of Limitations arguments as to Wakshinsky’s successor liability claims.
Plaintiff opposes the motion asserting that the mesothelioma claim is based on a newly discovered injury and is, thus, governed by CPLR 214-c and not the Revival Statute. She rejects the contention that CPLR 214-c (6) bars the amendment on the ground that the claims based on peritoneal mesothelioma are entirely different from the original asbestosis claim and invokes what is commonly referred to as the "two-injury rule.”
LEGAL ANALYSIS
CPLR 214-c (2), which establishes the discovery rule, reads as follows: "[notwithstanding the provisions of section 214, the three year period within which an action to recover damages for personal injury or injury to property caused by *914 the latent effects of exposure to any substance or combination of substances, in any form, upon or within the body or upon or within property must be commenced shall be computed from the date of discovery of the injury by the plaintiff or from the date when through the exercise of reasonable diligence such injury should have been discovered by the plaintiff, whichever is earlier”.
Subdivision (6) of CPLR 214-c creates an exception which limits the applicability of the discovery rule to prospective matters. Three criteria as set forth below must be satisfied in order to apply this exception:
"This section shall be applicable to acts, omissions or failures occurring prior to, on or after July first, nineteen hundred eighty-six, except that this section shall not be applicable to any act, omission or failure:
"(a) which occurred prior to July first, nineteen hundred eighty-six, and
"(b) which caused or contributed to an injury that either was discovered or through the exercise of reasonable diligence should have been discovered prior to such date, and
"(c) an action for which was or would have been barred because the applicable period of limitation had expired prior to such date”.
CPLR 214-c (6) (a) has been satisfied in that the act or omission, exposure to asbestos, occurred long before July 1, 1986. Similarly subdivision (6) (c) applies to the asbestosis claim because it was initially barred by the date of exposure rule and subsequently barred by failure to file against these defendants within the window period. Subdivision (6) (b) bars any claims relating to asbestosis since it had long been discovered.
While all claims relating to the 35 years that Wakshinsky suffered from asbestosis are barred, the issue that remains is whether subdivision (6) (b) has been satisfied with respect to the mesothelioma injury. Plaintiff argues that it has not because mesothelioma was not diagnosed until November of 1987 — thus it was neither discovered nor discoverable before July 1, 1986. Defendants argue that subdivision (6) (b) has been satisfied because the language of that subdivision says an injury that was discovered or should have been discovered. They claim that "an injury” refers to "any injury” because *915 the preceding language states, "this section shall not be applicable to any act, omission or failure” (emphasis added). Defendants contend that to interpret this section otherwise would violate the intent of the Legislature both to limit the retroactive effect of the newly enunciated "discovery rule” and to limit the period for which old claims could be brought to one year.
This court is persuaded that plaintiff’s position is consistent with the remedial purpose underlying the statutory change. CPLR 214-c was enacted to provide recourse for victims of toxic substances in cases in which manifestations of injury do not become apparent until many years after exposure. To define injury in subdivision (6) (b) as "any injury” would negate this salutary purpose. Instead, the word "injury” in paragraph (b) should be equated with physical manifestation of the particular disease for which compensation is sought (see, Jackson v Johns-Manville Sales Corp., 727 F2d 506 [5th Cir 1984], cert denied 478 US 1022 [1986]).
The defendants’ arguments do not account for the clear distinction between asbestosis and either lung cancer or the more virulent mesothelioma. In other jurisdictions, a diagnosis of mesothelioma or cancer subsequent to a diagnosis of asbestosis or pleural thickening gives rise to a separate cause. of action, with its own Statute of Limitations. The fact that the asbestosis claim was either time barred, as it would be here, or otherwise unavailable, has not precluded a cancer claim. (See, Jackson v Johns-Manville Sales Corp., supra; Wilson v Johns-Manville Sales Corp., 684 F2d 111 [DC Cir 1982]; Fear-son v Johns-Manville Sales Corp., 525 F Supp 671 [D DC 1981]; VaSalle v Celotex Corp., 161 Ill App 3d 808, 515 NE2d 684 [1st Dist, 4th Div 1987]; Pierce v Johns-Manville Sales Corp., 296 Md 656, 464 A2d 1020 [1983].)
The reason for making this distinction is rooted in the nature of the respective diseases. While asbestos and mesothelioma are both causally connected to asbestos fiber exposure, almost every other aspect of the diseases is different. Asbestosis, which has a latency period of 10 to 25 years after initial exposure, is characterized by diffuse, interstitial fibrotic pulmonary reaction. The effects of asbestosis are generally cumulative in that the continued exposure to asbestos dust increases both the risk and severity of the disease. The lungs of workers with asbestosis contain asbestos fibers, and clinical *916 manifestations of the disease include shortness of breath, dry hacking cough and clubbing of fingers.[2]
Mesothelioma is a rare malignancy which attacks the membrane surrounding the lung, or, as here, the lining of the abdomen. The latency period for mesothelioma is 30 to 35 years after exposure, but unlike asbestosis, mesothelioma may occur as a result of a short exposure to asbestos fibers. Clinical features of the disease include severe chest pain, shortness of breath, weight loss and death which usually follows within two years of diagnosis. Peritoneal mesothelioma, also a fatal disease, spreads throughout the body following its initial attack upon the stomach lining. (New York Academy of Science, Cancer and the Worker, at 50 [1977].) Mesothelioma and lung cancer may develop without any manifestation of asbestosis inasmuch as one is not an outgrowth, maturation or complication of the other.
In view of the fact that the diseases are separate and distinct, a party with asbestosis has no way of knowing whether or not he will develop cancer.[3] When Wakshinsky instituted his original suit to recover for injuries from asbestosis, he could not have anticipated, with any degree of probability, that he would develop mesothelioma.
It is well settled that recovery of damages for future consequences is limited to those cases in which the future consequence flow with reasonable certainty from the past harm. (Askey v Occidental Chem. Corp., 102 AD2d 130, 135 [4th Dept 1984].) "To meet the 'reasonably certain’ standard, courts have generally required plaintiffs to prove that it is more likely than not (a greater than 50% chance) that the projected consequence will occur”. (Wilson v Johns-Manville Sales Corp., supra, at 119.) Since the likelihood that any asbestosis victim including Wakshinsky would contract mesothelioma is substantially below 50%, he would not have been eligible to recover for the increased risk of developing mesothelioma in his original action.
*917 It is precisely because courts have rejected claims by asbestos victims for increased risk of cancer on the ground that they are too speculative that the right to recover independently should a second injury develop has been recognized in other jurisdictions. (See, Pollock v Johns-Manville Sales Corp., 686 F Supp 489 [D NJ 1988]; Mauro v Raymark Indus., 116 NJ 126, 561 A2d 257 [1989]; Devlin v Johns-Manville Sales Corp., 202 NJ Super 556, 495 A2d 495 [Law-Div 1985].)
It would be unfair to prohibit claims for increased risk of cancer for asbestosis sufferers and, at the same time, hold that failure to bring a suit against any or all defendants when a plaintiff is suffering from asbestosis acts as a time bar to a future cancer claim. To ameliorate that potential unfairness, it has been held that "the time to commence litigation does not begin to run on a separate and distinct disease until that disease becomes manifest”. (Wilson v Johns-Manville Sales Corp., supra, at 112; see also, Eagle-Picher Indus, v Cox, 481 So 2d 517 [Fla Dist Ct App, 3d Dist 1985]; Mauro v Raymark Indus., supra.)
Implicit or explicit recognition of the second injury concept is evident in the rulings and jury charges of the Federal District Courts and State courts in this jurisdiction as well. Juries have been told that they may not compensate asbestosis victims for increased risk of cancer because there is insufficient probability that the disease will develop. (See, Passantino v Raymark Indus., 87 Civ 5019 [SD NY, Oct. 18, 1988]; Nesselt v National Gypsum Corp., 87 Civ 5019 [SD NY, Oct. 20, 1988]; see also, Milligan v Celotex Corp., index No. 042142/88 [Sup Ct, NY County, July 26, 1989].) The language of these charges and rulings suggest that future actions will not be barred should cancer actually occur.
Another consideration weighing in favor of the second injury rule is the difference in the mineral composition of asbestos fibers. Some studies have linked mesothelioma with exposure to only certain types of asbestos fibers known as amphiboles. These studies have shown that in males occupationally exposed to asbestos, deaths are highest for those exposed to amphibole fibers alone (10.6%), followed by mixtures of chrysotile and amphibole fibers (3.6%) and are infrequent in workers exposed to chrysotile fibers alone (0.2%). (Mossman, Asbestos-Related Occupational Diseases and Their Reliance to Exposure to Asbestos in Buildings, reprinted in Hoyle and Levy, Asbestos in Buildings, at 6 [LJ Seminars *918 Press, 2d ed 1989].) Such findings have formed the basis of the "chrysotile defense” employed by some defendants. Should the original defendants in this suit use such a defense successfully, an inadequate award might result.
In concluding this discussion, the court notes that two important considerations underlie Statutes of Limitation. The first relates to availability of evidence to all parties and the second concerns the right of the defendant to be secure against stale claims and indefinite economic uncertainty (see, Wilson v Johns-Manville Sales Corp., supra, at 119). In the area of toxic torts, it is much more difficult to accommodate those concerns and at the same time provide adequate compensation for victims. Some of the evidence, namely, the manifestation of the injury itself does not emerge for a long period of time while other evidence, like product identification, becomes more difficult to obtain with the passage of time.
This State, following the majority of jurisdictions, has determined that the balancing of interests of all concerned requires that victims of toxic substances be compensated for the harm experienced even though the tortious conduct occurred as much as 30 or 40 years earlier. Case law has limited that recovery to actually demonstrable injuries and has rejected compensation for injuries that may but have not yet developed. Ironically, an individual who develops a new and more severe ailment might well be foreclosed from initiating a second action unless this court adopts the position that a subsequent action is appropriate. For that reason, consistent with the salutary purposes of the discovery rule and the Revival Statute, the court finds that the Statute of Limitations starts to run anew upon the discovery of a second injury.
SUCCESSOR LIABILITY CLAIMS
Defendants H & A, Spraycraft, National and Armstrong contend that plaintiff should not be permitted to include new allegations of successor liability in the amended complaint. Since these allegations were not raised within the window period, defendants assert that they are time barred. In the original complaint, H & A is included as a successor in interest to Spraycraft. In the new complaint, H & A is listed as a successor in interest to two defendants not joined in the original complaint, Asbestospray and APM, and Spraycraft is listed as a successor in interest to Asbestospray.
Since the court has determined that the amended complaint *919 is timely as to the mesothelioma claim and that Asbestospray and APM are proper parties to the action, the issue presented here is whether or not the allegations of successor liability relate back to the date of the original complaint. CPLR 203 (e), the relevant statute, provides in part that, “[a] claim asserted in an amended pleading is deemed to have been interposed, at the time the claims in the original pleading were interposed, unless the original pleading does not give notice of the transactions, occurrences, or series of transactions or occurrences, to be proved pursuant to the amended pleading.” Further, CPLR 203 (b) provides that for defendants united in interest, the date of an amended complaint is deemed to be the date of the original pleading.
Plaintiffs amended complaint fulfills the requirements of both CPLR 203 (b) and (e). As to CPLR 203 (e), the allegations of the original and the amended complaints arose out of the same conduct or transactions. Decedent’s injuries arose from his exposure to asbestos products during the same time period and at the same jobsites. Defendants are united in interest for the purposes of CPLR 203 (b) when as here they have common defenses and will stand or fall together (see, Brock v Bua, 83 AD2d 61 [2d Dept 1981]).
Moreover, a change in corporate status will not prejudice these defendants. The new defendants are parties to numerous personal injury asbestos suits in this jurisdiction, and may assert many of the same standard asbestos defenses such as state of the art, lack of product identification or the chrysotile defense. There is no evidence that would have been available to defendants had they been named in the original 1987 complaint that is not available to them now. (See, FosterLipkins Corp. v State of New York, 84 AD2d 870 [3d Dept 1981].) Plaintiff will still have to prove that H & A is, in fact, a successor in interest to Asbestospray and APM and that Spraycraft is a successor in interest to Asbestospray. She will also have to prove that there was an agreement by the successor to assume liability for its predecessor’s tortious conduct.
Accordingly, defendants’ motion to dismiss the amended complaint and strike claims is denied. The amended complaint is deemed served and defendants shall answer this complaint within 20 days of receipt of this order with notice of entry.

. The 1987 complaint sued Spraycraft individually and H & A individually and as a successor corporation only to Spraycraft. The 1989 complaint lists H & A individually as well as a successor to Asbestospray, Spraycraft and APM. Spraycraft is sued both individually and as a successor to Asbestospray. National Gypsum did not indicate to the court which of the several new allegations of successor liability they disputed.

. Peters and Peters, Asbestos Disease Update, at 39 (1989).

. One early study cited in Wilson v Johns-Manville Sales Corp. (684 F2d 111, 120) estimates that 12% of asbestosis victims later contract peritoneal mesothelioma and 15% will contract pleural mesothelioma (Selikoff, Churg & Hammond, Relation Between Exposure to Asbestos and Mesothelioma, 272 New Eng J Med 560, 562 [1965]; see also, Newhouse and Berry, Predictions of Mortality from Mesothelial Tumours in Asbestos Factory Workers, J Ind Med 33:147 [1976], cited in Peters, op. cit., at 17).