**In re BREAST IMPLANT CASES.**

Nos. 92 CV 7821 (S.D.N.Y.), 92 CV 9471 (S.D.N.Y.), 92 CV 9496 (S.D.N.Y.), 94 CV 7731 (S.D.N.Y.), 96 BI 1 (S.D.N.Y.), 93 CV 159 (E.D.N.Y.), 93 CV 5697 (E.D.N.Y.), 94 CV 477 (E.D.N.Y.), 94 CV 1145 (E.D.N.Y.), 94 CV 3293 (E.D.N.Y.), 94 CV 3349 (E.D.N.Y.), 94 CV 3336 (E.D.N.Y.), 94 CV 3358 (E.D.N.Y.) and 96 BI 1 (E.D.N.Y.).

United States District Court,
E. and S.D. New York.

Oct. 23, 1996.

Perry Weitz, Robert Gordon, Denise Dunleavy, Mike Williams, Weitz & Luxenberg, New York City, for Plaintiffs.

Mary A. Wells, Wells, Anderson & Race, L.L.C., Denver, CO, William B. Griffin, Brobeck, Phleger & Harrison L.L.P., New York City, George H. Link, Debra E. Pole, Brobeck, Phleger & Harrison L.L.P., Los Angeles, CA, for Baxter.

Tamar P. Halpern, Phillips, Lytle, Hitchcock, Blaine & Huber, Buffalo, New York, Joseph M. Price, Faegre & Benson, Minneapolis, MN, Jane Fugate Thorpe, Pursley, Howell, Lowery & Meeks, Atlanta, GA, David P. Herrick, Jenkens & Gilchrist, Dallas, TX, Arvin Maskin, Weil, Gotshal & Manges, New York City for 3M.

Eric M. Kraus, James T. Conlon, Sedgwick, Detert Moran & Arnold, New York City, Nathan Schactman, Jack Flaherty, McCarter & English, Newark, NJ, for Bristol Mayer.

Before BAER, District Judge, and WEINSTEIN, Senior District Judge:

## AMENDED PRELIMINARY MEMORANDUM

### I. Introduction

Typical of the breast implant cases pending in the two courts is the one briefly described below. Defendants have moved for summary judgement and for various in limine rulings, including exclusion of testimony of plaintiffs' primary experts. Defendants have also opposed the courts' suggestion that there be severance of issues. The motion for summary judgement must be denied with leave to renew. Severance must be granted.

Plaintiffs Anna and Joseph Nyitray sue defendants Baxter Healthcare Corporation and Baxter International Inc. alleging severe and permanent injuries resulting from exposure to silicone in Ms. Nyitray's silicone gel breast implants. 93 CV 159 (E.D.N.Y.). The complaint, as in related cases, alleges numerous causes of action, including negligence, fraud and misrepresentation, strict liability, breach of express and implied warranties, violation of various consumer protection statutes, and loss of consortium. They claim a variety of silicone-related illnesses, some of which can be denominated as "local injuries" and others as "systemic diseases." Plaintiffs' local injuries allegedly · include pain and suffering arising from capsular contracture, rupture, leakage, migration, granulomas, infection and temporary or permanent disfigurement. Plaintiffs' claimed systemic illnesses include autoimmune and connective tissue disorders. Both sets of claims require intricate expert scientific testimony.

### II. Procedural History

Justice Joan Lobis, New York Supreme Court, New York County, was assigned to supervise preparation for all breast implant cases filed in New York State Supreme Court; Judge Harold Baer, Jr., United States District Court for the Southern District of New York, was assigned all cases pending in the Southern District; and Senior Judge Jack B. Weinstein, United States District Court for the Eastern District of New York, was assigned all cases pending in the Eastern District. The three judges met together with federal magistrate judges assigned to these cases in chambers and en banc in the New York Supreme Court courthouse and in the Southern and Eastern District courthouses to consider expediting disposition.

The parties have estimated that thousands of breast implant cases may shortly be transferred to New York state and federal courts. To avoid a serious judicial emergency the three judges and two magistrate judges agreed with all counsel that they would need to carry forward expeditiously the extraordinarily helpful work of Chief Judge Sam C. Pointer, Jr., MDL–926 transferee judge, in completing preparation for trial, including coordinating local discovery, simplifying issues and setting cases for trial. See, e.g., Pretrial and Revised Case Management, Order No. 30, MDL–926, March 25, 1996.

An integrated *Daubert* hearing, *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), was conducted by and on behalf of all plaintiffs and defense counsel in pending and projected cases. During the extensive evidentiary hearing the three judges and Magistrate Judge Cheryl L. Pollak presided together from the same bench, heard many witnesses, and received in evidence a large collection of documents and scientific papers. In addition, incorporated in the record were transcripts and documents from the *Daubert* hearings recently held in breast implant

cases in other United States District Courts. *See, e.g., Hall v. Baxter Healthcare Corp. et. al.,* 92–182JO–Lead (D.Ore.).

The imaginative procedures and information developed by Judge Robert E. Jones in Oregon proved particularly helpful since they included evaluation by neutral experts appointed by Judge Jones. Chief Judge Sam C. Pointer, Jr. has appointed a national committee of experts pursuant to Rule 706 of the Federal Rules of Evidence. It will probably be some time before this committee's important work will be completed.

We should not rush to judgment where new scientific theories are proposed that lack adequate support or refutation because they are so new. As Thomas S. Kuhn points out in *The Structure of Scientific Revolution* 52 (2d ed. 1970):

New and unsuspected phenomena are ... repeatedly uncovered by scientific research, and radical new theories have again and again been invented by scientists. History even suggests that the scientific enterprise has developed a uniquely powerful technique for producing surprises of this sort.

While plaintiffs' submissions can hardly be characterized as "revolutionary" in the sense that Kuhn uses this term, it may have the scintilla of plausibility that merits reservation of judgement while evaluation goes forward.

### III. Testimony at Daubert Hearing

The plaintiffs submitted evidence suggesting a prima facie case as to at least one defendant that silicone breast implants were inadequately designed and manufactured and that they were sold without appropriate warnings. They also provided proof suggesting a prima case that deficiencies in the product caused ruptures and bleeding of the implants' contents, resulting in pain, inflammation and other local phenomena that required explanation in many cases and caused other damage.

The local disease resulting from the silicone breast implants was defined by one of plaintiffs' experts as follows:

There is a local disease associated with silicone implantation. This local disease includes but is not limited to: capsular contracture, breast pain, chest wall pain, axillary pain, pseudo myocardial infarction syndrome, mastitis, nipple discharge, axillary lymphadenopathy, peri-prosthetic nodules, silicone granulomas, foreign body reaction, myositis of the pectoral muscle, pruritic rashes over the breast and local morphea.

Plaintiffs' exhibit 507. In addition, other local symptoms were caused by mechanical and other problems associated with misshapen breasts and surgical operations to explant and reimplant.

The local diseases are separate and distinct from the claimed systemic diseases. As the plaintiffs' lead clinical expert testified:

The Court: In the asbestos case we treat as separate diseases pleural plaque and asbestosis and mesothelioma. I notice in Exhibit Number 507, item 9, you say there is a, and I emphasize a, "a local disease". Is that a separate disease and entity from the systemic diseases?

The Witness: .... I believe that yes, there are women who develop local disease who do not go on to develop a systemic disease.

The Court: That we understand?

The Witness: To that extent, yes, I believe it is separate. I believe that events going on locally such as cytosine generation may well play a role in the evolution of some but not necessarily all the systemic symptoms. And I further believe that a woman can have the systemic illness without having physical complaints referable to elastomer disease. So to that extent, I think it's more yes than no. We can look at them as separate but related diseases.

The Court: That is similar to what we have in asbestos, isn't it?

The Witness: Yes.

The Court: So to the extent that pleural plaque, for example, would be considered a disease separate from mesothelioma, for our purposes the same could be said or would be said of local diseases

and these subsequently developed or concurrently developing or non-developing systemic diseases, is that true?

The Witness: That would be true.

Transcript 953–54.

The evidence of both defendants' and plaintiffs' experts supports the conclusion that the silicone implants at issue do not cause classical recognized diseases such as interstitial pulmonary fibrosis, systemic lupus erythematosus, rheumatoid arthritis, or Sjogren's Syndrome. Experts also agreed that the breast implants did not exacerbate classic rheumatology or connective tissue diseases.

It was the position of plaintiffs' experts, controverted by those of defendant, that a new undifferentiated atypical disease associated with exposure to silicone was caused by silicone gel implants. The hundreds of symptoms associated with this undifferentiated disease, the lack of any acceptable agreed upon definition, the inadequacy of any satisfactory supporting epidemiological or animal studies, the lack of a scientifically acceptable showing of medical plausibility, and the questionable nature of the clinical conclusions of treating doctors, all point to a failure of proof in making a prima facie case that silicone implants cause any of the syndromes claimed except for local disease.

## IV. Summary Judgement

█ The deficiency of available proof would normally require a grant of summary judgement to defendants as to all but local symptoms. The national Rule 706 committee has, however, not yet reported. It is possible that further information will in time support plaintiffs' general systemic claims sufficiently to permit a jury trial. A grant of summary judgement and dismissal of plaintiffs' cases now would be unfair since scientists are still developing relevant information.

In cases where additional information is required to adequately pass on a motion for summary judgement, the practice has been to deny the motion, with leave to renew, allowing further discovery and development of evidence. As the Second Circuit has recently stated in asbestos litigation regarding a ruling on a summary judgement motion,

"[a] sufficiency inquiry which asks whether the collective weight of a litigant's evidence is adequate to present a jury question lies further down the litigational road." *In re Joint Eastern & Southern Dist. Asbestos Lit.,* 52 F.3d 1124, 1132 (2d Cir.1995).

The parties have not yet even briefed the *Daubert* issue following the hearings. It would be premature to grant summary judgement motions, which would entail a review of the extensive scientific evidence, when the judges have yet to complete the threshold inquiry into the admissibility of plaintiffs' expert testimony. Defendants' summary judgement motions are not ripe for adjudication and must be denied with leave to renew.

This is not to say that summary judgement may not be appropriate at some time in these cases. The Supreme Court made clear in *Daubert* that summary judgement is appropriate "in the event the trial court concludes that the scintilla of evidence presented supporting a position is insufficient to allow a reasonable juror to conclude that the position more likely than not is true." *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 596, 113 S.Ct. 2786, 2798, 125 L.Ed.2d 469 (1993). At this juncture, the courts are not in a position to conclude finally that " 'the evidence is such that, without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, there can be but one conclusion as to the verdict that reasonable [jurors] could ... reach....' " *In re Joint Eastern & Southern Dist. Asbestos Lit.,* 52 F.3d 1124, 1133 (2d Cir.1995).

## V. Severance

█ New York substantive law governs in diversity cases such as the instant ones. *See, e.g., Ashley v. Abbott Labs.,* 789 F.Supp. 552 (E.D.N.Y.1992). New York courts recognize that a single causal agent or event may produce two "diseases [that] are separate and distinct." *Fusaro v. Porter–Hayden Co.,* 145 Misc.2d 911, 916, 548 N.Y.S.2d 856, 859 (1989), *aff'd,* 170 A.D.2d 239, 565 N.Y.S.2d 357 (1st Dep't 1991). Each disease may give rise to its own cause of action. The *Fusaro* court noted that "[i]mplicit or explicit recognition of the second injury concept is evident

in the rulings and jury charges of the Federal District Courts and States Courts in this jurisdiction...." 145 Misc.2d at 917, 548 N.Y.S.2d at 860. *See also, Sackman v. Liggett Group, Inc.,* 167 F.R.D. 6, 13 (E.D.N.Y. 1996) ("[i]n recent years, the New York courts have recognized the 'two injury rule'"); *Sweeney v. General Printing Inc.,* 210 A.D.2d 865, 866, 621 N.Y.S.2d 132, 133 (1994) ("separate and distinct disease processes may constitute different injuries" and give rise to two causes of action).

Under the [two disease] rule, diseases that share a common cause may nonetheless be held separate and distinct where their biological manifestations are different and where the presence of one is not necessarily a predicate for the other's development.

*Braune v. Abbott Labs.,* 895 F.Supp. 530, 555–56 (E.D.N.Y.1995).

■ Ms. Nyitray's complaint, typical of many pending breast implant cases, alleges two separate injuries. The first involves "local injuries," which encompass pain and suffering as a result of scarring, changes in the sensation of the breasts, leakage, silicone granuloma formation, and silicone migration. The second, the alleged systemic ones, involve undifferentiated tissue and autoimmune diseases with a highly complex and problematic etiology and latency. Each of the injuries—local and systemic—may be treated as providing its own cause of action a claim for relief and may be tried separately.

■ Even if the courts were mistaken in their view of the testimony, and there is but one disease and one cause of action, their discretionary power to order separate trials remains. Rule 42(b) of the Federal Rules of Civil Procedure allows federal courts to "order a separate trial of any claim ... or of any separate issue" whenever the separation would be "convenien[t] or ... avoid prejudice, or where separate trials will be conducive to expedition and economy." Federal courts may order separate trials for different issues within one cause of action, or for distinct claims. *See., e.g., Simpson v. Pittsburgh Corning Corp.,* 901 F.2d 277, 283 (2d Cir.1990) ("Rule 42(b) of the Federal Rules of Civil Procedure vests discretion in a district court to order a separate trial of an issue for various reasons ....."); *Huffmaster v. United States,* 186 F.Supp. 120, 124 (N.D.Cal.1960) (A federal "[c]ourt has power to order a separate trial of issues, sua sponte, to further convenience, or to avoid prejudice."); *In re Innotron Diagnostics,* 800 F.2d 1077, 1084 (Fed.Cir.1986) ("In deciding whether one trial or separate trials will best serve the convenience of the parties and the court, avoid prejudice, and minimize expense and delay, the major consideration is directed toward the choice most likely to result in a final disposition of the litigation."); Note, Bifurcation, 14 Vand.L.Rev. 831 (1961); Zeisel and Callahan, Split Trials and Time Saving, 76 Harv.L.Rev. 1600 (1963).

■ Federal courts sitting in diversity cases apply federal procedural law and state substantive law. *Erie Railroad v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). *See also, e.g., Gasperini v. Center for Humanities, Inc.,* —— U.S. ——, ——, 116 S.Ct. 2211, 2219, 135 L.Ed.2d 659 (1996). An order to try issues separately is procedural. *See, e.g., Hamm v. American Home Products,* 888 F.Supp. 1037, 1038 (E.D.Cal.1995). Characterizing an issue as 'procedural' rather than 'substantive' does not necessarily end the inquiry, although "[c]oncerning matters covered by the Federal Rules of Civil Procedure, the characterization question is usually unproblematic...." *Gasperini,* —— U.S. at ——, n. 7, 116 S.Ct. at 2219, n. 7. A federal court sitting in diversity must also consider whether the application of a federal, rather than a state rule will be outcome determinative. *Guaranty Trust Co. v. York,* 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945).

■ Here there is no *Erie* reason to avoid severance. The same result would be required were the courts to apply the relevant New York severance provision, CPLR 603. CPLR 603, in language similar to that of Rule 42(b), provides:

In furtherance of convenience or to avoid prejudice the court may order a severance of claims, or may order a separate trial of any claim, or of any separate issue. The court may order the trial of any claim prior to the trial of the others.

CPLR 603 case law, like federal interpretation of Rule 42(b), permits courts sua sponte to sever issues for trial. *See, e.g., Fetterman v. Evans,* 612 N.Y.S.2d 479, 480, 204 A.D.2d 888 (Sup.Ct.3d Dep't 1994); *Marine Midland Bank, N.A. v. Cafferty,* 571 N.Y.S.2d 628, 631, 174 A.D.2d 932, 935 (Sup.Ct.3d Dep't 1991).

The breast implant cases present complex scientific evidence and complicated theories of causation. In order to minimize potential confusion of jurors who must decide the facts, as well as to ensure that plaintiffs and defendants receive fair and well-considered verdicts on their various theories, the courts, until further notice, will sever the trial of local and systemic injuries, in the interests of justice and effective court administration. The first trial will focus on allegations of local injury and the second on allegations of systemic diseases. Punitive damages will then be considered when appropriate.

### VI. Conclusion

It would be unfair to plaintiffs to put off trials of local damage issues. Plaintiffs have waited for years to obtain a trial. They are entitled to a prompt trial of those issues which can be tried now.

Motions for summary judgement are denied with leave to renew. Discovery may proceed on all issues in all cases.

It is premature to decide before full briefing and argument whether *Daubert* requires exclusion of plaintiffs' witnesses on the systemic issues. After the parties have been heard further on this subject, a memorandum will be issued. While additional witnesses may require further *Daubert* challenges, those witnesses who have already testified at this integrated hearing will not testify at another *Daubert* hearing.

Following the pattern in the asbestos cases, the parties will arrange with the judges and magistrate judges for the consolidation for trial of substantial blocks of closely related cases. It is contemplated that other trial judges may be needed to try or to settle blocks of cases should, as is presently contemplated, large numbers of breast implant cases soon be transferred by the multidistrict judge to courts in New York.

So ordered.