Emilie Jane **HUMPHREYS**, Plaintiff,

v.

W. Hildreth **HUMPHREYS**, Defendant.

No. CV 95–2270 (ADS).

United States District Court,
E.D. New York.

Jan. 4, 1997.

Louise S. Jarvis, White Plains, NY, for Plaintiff.

Nixon, Hargrave, Devans & Doyle LLP, Garden City, NY (Thomas S. D'Antonio, James O'Brien, Jr., of counsel), for Defendant.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge:

This diversity action arises from the claims of the plaintiff, Emilie Jane Humphreys ("Emilie" or the "plaintiff") that her ex-husband, W. Hildreth Humphreys ("Hildreth" or the "defendant") is liable to her under common law tort theories sounding in negligence and strict liability based upon ultrahazardous activity. According to the plaintiff, she became ill, and has sustained serious personal injuries, as the result of her exposure to the defendant's use of paint containing toxic substances in his work as an artist while the parties were living together.

Presently before the Court is the defendant's motion for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c). According to Hildreth, his ex-wife's claims are barred by the applicable statute of limitations and further, her cause of action based on strict tort liability fails to state a claim upon which relief can be granted.

### I. *Background*

The plaintiff, Emilie, now a resident of Cambridge, Massachusetts, was married to the defendant, Hildreth, in September 1986. The two lived together in Southampton, New York from that time until 1989 when the plaintiff moved to Cambridge to study at Radcliffe College.

According to the Complaint, while the parties were married and lived together, Hildreth used their home both as a "living quarters" and a "painting studio." Emilie pleads, upon information and belief, that the defendant regularly used "oil-based paints containing multiple poisonous heavy metals, as well as volatile organic compounds" in his work. The plaintiff claims that during the parties' marriage she was compelled to live with these toxins, along with "mold due to retained moisture" and "contaminated drinking water." As a result, throughout this period she developed "eye irritations, recurrent rashes, severe fatigue, recurrent vaginal candidiases, cognitive dysfunction, with general depression and malaise, cause unknown."

In 1989, Emilie left Southampton to study landscape design at Radcliffe College in Cambridge, Massachusetts. In May 1991 her symptoms worsened to the point where she had to forego her studies. According to the Complaint, by 1993 she was housebound.

The plaintiff claims that in April 1993, she was diagnosed with "multiple chemical sensitivities [MCS], food allergies, and cognitive dysfunction due to unnecessary exposure to multiple toxic chemicals used in conjunction with paints and solvents, chemicals in the drinking water supply, and chronic mold at the former Southampton residence." As a result of her exposure to these substances she has allegedly suffered and continues to suffer "serious personal injuries causing her

to become and remain sick, sore, lame and disabled; confining her to home and bed; compelling her to obtain hospital and medical treatment" and preventing her from obtaining employment and engaging in other gainful activities.

Based on these allegations, the plaintiff pleads two causes of action: (1) negligence; and (2) strict liability based on ultrahazardous activity. The defendant moves in accordance with the October 4, 1996 order of United States Magistrate Judge Michael L. Orenstein, for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c) arguing that Emilie's claims are barred by the applicable statute of limitations, and in the alternative, that her strict liability claim fails to state a cause of action upon which relief can be granted. On November 18, 1996, the Court converted this motion to one for summary judgment, see, e.g., *Gagliardi v. Village of Pawling*, 18 F.3d 188, 193 (2d Cir.1994) (recognizing the standard for converting motion for judgment on the pleadings to one for summary judgment), and the Court gave the plaintiff until December 2, 1996 to submit additional material in support of her position. The defendant was then given until December 9, 1996 to submit any further response. No additional papers were filed by either party.

## II. *Discussion*

### A. *The standard*

A court may grant summary judgment only if the evidence, viewed in the light most favorable to the party opposing the motion, presents no genuine issue of material fact, *Samuels v. Mockry*, 77 F.3d 34, 35 (2d Cir. 1996), and the movant is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The Court must, however, resolve all ambiguities and draw all reasonable inferences in the light most favorable to the party opposing the motion. *See Quaratino v. Tiffany & Co.*, 71 F.3d 58 (2d Cir.1995); *Twin Laboratories, Inc. v. Weider Health & Fitness*, 900 F.2d 566, 568 (2d Cir.1990); *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir.1986), *cert.*

*denied*, 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987).

According to the Second Circuit, "[s]ummary judgment is a tool to winnow out from the trial calendar those cases whose facts predestine them to result in a directed verdict." *United National Ins. Co. v. The Tunnel, Inc.*, 988 F.2d 351, 355 (2d Cir.1993). Once a party moves for summary judgment, in order to avoid the granting of the motion, the non-movant must come forward with specific facts showing that a genuine issue for trial exists. *West–Fair Elec. Contractors v. Aetna Cas. & Surety Co.*, 78 F.3d 61, 63 (2d Cir.1996); *see also Western World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d Cir. 1990) (quoting Fed.R.Civ.P. 56(e)). A genuine issue of material fact exists if "a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby,* 477 U.S. at 248, 106 S.Ct. at 2510; *see Vann v. New York City*, 72 F.3d 1040 (2d Cir.1995).

However, mere conclusory allegations, speculation or conjecture will not avail a party resisting summary judgment. *Kulak v. City of New York*, 88 F.3d 63, 70 (2d Cir. 1996). If there is evidence in the record as to any material fact from which an inference could be drawn in favor of the non-movant, summary judgment is unavailable. *Holt v. KMI–Continental, Inc.*, 95 F.3d 123, 128 (2d Cir.1996); *Rattner v. Netburn*, 930 F.2d 204, 209 (2d Cir.1991). Finally, the Court is charged with the function of "issue finding," not "issue resolution." *Gallo v. Prudential Residential Services, Ltd. Partnership*, 22 F.3d 1219, 1224 (2d Cir.1994).

### B. *The defendant's motion*
#### 1. *The statute of limitations*

Initially the defendant argues that the plaintiff's claims are barred by the three year statute of limitations governing personal injury claims. *See* N.Y.Civ.Prac.L. & R. ("CPLR") § 214(5). In a case such as this, where the personal injury claims are based on "latent effects of exposure to a[ ] substance or combination of substances," the three year period runs from "the date of discovery of the injury by the plaintiff or from the date when through the exercise of reasonable diligence such injury should been

discovered by the plaintiff, whichever is earlier." CPLR § 214–c(2).

▮▮▮ "This discovery rule was enacted to 'remed[y] a fundamental injustice in the laws of [New York] which has deprived persons suffering from exposure to toxic or harmful substances *from having the opportunity to present their case to the court.*" *Rothstein v. Tennessee Gas Pipeline Co.*, 87 N.Y.2d 90, 637 N.Y.S.2d 674, 677, 661 N.E.2d 146, 149 (1995) quoting, Governor's Mem. Approving L.1986, ch. 682, 1986 N.Y. Legis Ann. at 288 (emphasis in original). As a remedial statute, section 214–c should be given a liberal construction. *Id.*, citing, 1 Weinstein–Korn–Miller, N.Y.Civ.Prac. ¶ 214–c.06 at 2–497. The purpose of this rule was to replace the bright line "exposure rule," which provided that the statute of limitations would run from the date of the exposure, "with a balanced and more equitable discovery accrual mechanism." *Id.* 637 N.Y.S.2d at 676, 661 N.E.2d at 148.

However, the discovery rule, while easily stated has proven more difficult to apply. As one distinguished commentator recognized:

> [i]t is hard to believe that the first onset of symptoms would trigger the statute since this would confer precious little benefit over the old date-of-injury rule in New York. On the other hand, it seems clear that the statute does not envision that the period of limitations will await the plaintiff's personal dawning of consciousness of each and every element of his cause of action.

Joseph McLaughlin, Prac. Comm. CPLR 214–c:2. Indeed the departments of the Appellate Division of this state have reached inconsistent conclusions with respect to CPLR § 214–c(2).

In *Seekings v. Jamestown Public Sch. Sys.*, —— A.D.2d ——, 637 N.Y.S.2d 897 (4th Dep't 1996), the Fourth Department held that a cause of action accrues when the plaintiff suffers symptoms which indicate that she has sustained an injury. In that case, the petitioner's daughter, Christina, was first exposed to toxic substances on September 9, 1992 when she began the school year during a building renovation project. As a result of her exposure to chemical substances generat-

ed by the project, Christina began exhibiting symptoms of poor health a week later which were initially diagnosed as Lupus Syndrome. *Id.* 637 N.Y.S.2d at 898. On November 17, 1994, she was diagnosed with "environmentally related allergy problems." *Id.* She moved to file a late notice of claim against the school district on March 21, 1995. In holding the petitioner's claim time barred, the Fourth Department recognized that discovery of the injury under CPLR § 214–c does not mean "discovery of the cause of the injury." *Id.* (internal quotation omitted); *see also Crossman v. Harding Indus. Tool & Master Chemical Corp.*, 222 A.D.2d 1081, 635 N.Y.S.2d 397, 399 (4th Dep't 1995) (statute of limitations runs from discovery of the injury as opposed to discovery that the injury was caused by a particular chemical). Rather, "[b]ecause [the petitioner's daughter] exhibited symptoms in September 1992, which were ultimately diagnosed as 'environmentally related allergy problems', the motion to file a late notice of claim in 1995" was denied. Similarly in *Johnson v. Ashland Oil, Inc.*, 195 A.D.2d 980, 601 N.Y.S.2d 756 (4th Dep't 1993), the court found "no merit to plaintiffs' argument that the Statute of Limitations did not begin to run until plaintiff Frank Johnson received a diagnosis ... and learned for the first time the specific chemical that caused his injury." *Id.* 601 N.Y.S.2d at 757.

The Second and Third Departments appear to firmly fix the time of accrual at the date of diagnosis. In *Sweeney v. General Printing, Inc.*, 210 A.D.2d 865, 621 N.Y.S.2d 132, 133 (3d Dep't 1994), the Third Department recognized that "a plaintiff must be considered to have discovered such an injury when he or she is actually diagnosed as suffering from a particular disease, even though unaware of its cause." More recently, in *Annunziato v. City of New York*, 224 A.D.2d 31, 647 N.Y.S.2d 850 (2d Dep't 1996), the Second Department noted that the parties did not dispute that "the date their causes of action accrued, *i.e.*, the 'date of discovery of the injury' under CPLR § 214–c(3), is the date their illnesses were diagnosed." *Id.* 647 N.Y.S.2d at 854 (collecting cases)

The First Department appears to apply a more liberal interpretation of CPLR § 214–c(2), holding that "[t]he operative question is when sufficient information was communicated to plaintiff so as to induce a reasonable person to associate his physical condition with exposure to a toxic substance." *Cochrane v. Owens–Corning Fiberglas Corp.*, 219 A.D.2d 557, 631 N.Y.S.2d 358, 360 (1st Dep't 1995); *see also Scherrer v. Time Equities, Inc.*, 218 A.D.2d 116, 634 N.Y.S.2d 680, 685 (1st Dep't 1995); Vincent C. Alexander, CPLR § 214–c, Prac. Comm. C214–c:2 1996 (Supp.1997). In *Wetherill v. Eli Lilly & Co.*, 225 A.D.2d 372, 639 N.Y.S.2d 40 (1st Dep't), *leave to appeal granted,* — N.Y.2d —, 644 N.Y.S.2d 965 (1996), the court restated the inquiry as whether the plaintiff "did, or should have, become aware that her condition was not a natural, if unfortunate, happenstance but was the result of an injury inflicted upon her." *Id.* 639 N.Y.S.2d at 41.

The courts in the Eastern District of New York do not appear to be consistent on this issue. In *Parajecki v. International Business Machines Corp.*, 899 F.Supp. 1050 (E.D.N.Y.1995), Judge Hurley, quoting *Wallen v. AT & T Co.*, Index No. 12336/91 (Sup. Ct. Bronx Cty. Sept. 17, 1992), *aff'd,* 195 A.D.2d 417, 601 N.Y.S.2d 796 (1st Dep't), *leave to appeal denied,* 82 N.Y.2d 659, 605 N.Y.S.2d 5, 625 N.E.2d 590 (1993), recognized that CPLR § 214–c "fixes the significant date as of the time of *discovery, actual or imputed, of the injury,* not the time of discovery of the *cause* of the injury." *Id.* at 1054 (emphasis in original). In *Braune v. Abbott Laboratories*, 895 F.Supp. 530 (E.D.N.Y.1995), Judge Weinstein applied a broader reading holding that "[i]n a DES case, New York policy requires that section 214–c(2) be construed as triggering the statute of limitations, at the earliest, on a plaintiff's reasonable discovery of 1) her medical problem *and* 2) the fact of its human causes." *Id.* at 546 (emphasis in original).

Despite these varied interpretations of section 214–c(2), this Court finds itself in a situation similar to that faced by the Second Circuit in *Griffin v. Garratt–Callahan Co.*, 74 F.3d 36 (2d Cir.1996). In *Griffin,* in 1985 the plaintiff inhaled a substantial amount of chemicals he was placing into a water tower during the course of his employment. Soon thereafter he was admitted to the hospital for pneumonia and emphysema and advised by his doctor that his injuries may have resulted from these chemicals although he could not say for sure. From that point until 1992, the plaintiff suffered from a variety of medical problems and he eventually filed suit in 1993.

The Second Circuit, recognizing that while some New York courts have read section 214–c(2) to require "an injured person to file suit within three years after discovery of the injury," without regard to discovery of the cause of the injury, *id.* at 39, citing, *Sweeney,* 210 A.D.2d at 865–66, 621 N.Y.S.2d at 133; *Johnson,* 195 A.D.2d at 981, 601 N.Y.S.2d at 757, other courts in this state require both discovery of the injury as well as the fact that some man made cause was responsible, *id.* at 38, citing, *Braune,* 895 F.Supp. at 541–46, or at least implicitly requiring "discovery of the cause of the injury." *Id.* at 39, citing, *Cochrane,* 631 N.Y.S.2d at 360. Notwithstanding this distinction, the Second Circuit affirmed the district court's decision granting the defendant's motion for summary judgment finding that no matter which interpretation of section 214–c(2) is applied, the plaintiff's claims were time barred. The Court faces a similar situation in this case. *Id.*

This lawsuit was commenced by the plaintiff filing her Complaint on June 6, 1995. Accordingly, in order to survive the defendant's motion, her claims would have had to accrue no earlier than June 6, 1992. A review of the evidence submitted in support of Hildreth's motion, which Emilie has not refuted, establishes that her claims are time barred as a matter of law, and this conclusion is not altered by the Court's choice of interpretation of CPLR section 214–c(2).

The parties were married in September 1986. According to the plaintiff, during this period she was exposed to oil-based paints used by the defendant as an artist as well as mold and contaminated water in the marital residence. In the Complaint, she pleads that while "residing at the Southampton residence [until 1989] Emilie developed eye irritations, recurrent rashes, severe fatigue, recurrent

vaginal candidiasis, cognitive dysfunction, with general depression and malaise, cause unknown." Compl. ¶ 13. However, while she alleges that she did not know the cause of her illness, in an affidavit submitted in the parties' related matrimonial action, the plaintiff swore that as the result of her ongoing ailments, since 1987 she has "traveled with various air filters and had two medical quality air filters in [the marital] home." Aff. of Thomas D'Antonio, Oct. 18, 1996, Exh. F, Aff. of Emilie Humphreys, Aug. 18, 1993 ¶ 3. Further, she purchased a "Miele vacuum cleaner" and a "nilfisk vacuum cleaner" for the Southampton residence specially designed for use by persons allergic to dust mites. *Id.* Also, to combat the mold, dehumidifiers were installed. *Id.*

In a letter dated September 16, 1995 to the Disciplinary Committee for the Appellate Division, First Department, the plaintiff discussed the conditions of the marital domicile for the years 1986 through 1992, which she considered to be a "toxic" atmosphere. *Id.* at Exh. G. Further, during her deposition on September 27, 1996, Emilie admitted that she considered the Southampton residence as having an adverse effect on her health, testifying as follows:

Q: And you advised your husband that you were displeased with his painting habits, with the presence of the mold in the house?

A: I was very concerned, yes.

Q: To such an extent that you considered the house to be toxic in 1989?

A: Yes.

*Id.* at Exh. D, Dep. of Emilie Humphreys, Sept. 27, 1996 at 90–91.

The defendant provides additional evidence, namely the notes of the plaintiff's treating physicians regarding the symptoms she was suffering from, and the apparent cause of her maladies. According to the notes of her treating physician in Massachusetts, Dr. Carol Englender, on November 12, 1991, the plaintiff was suffering from "Candida," "Electromag sen," "MCS" and "allergies." *Id.* at Exh. I. Dr. Englender's December 16, 1991 notes describe Emilie's condition as "depression," "chem sens," "candida," and "borderline Zn." An entry

dated January 12, 1993 indicates that the plaintiff "filed for divorce" and "[m]ay need a letter re MCS/chemical exposure in NY." Consistent with these notes, Dr. Englender wrote a letter dated April 12, 1993, to an attorney, Sylvia Goldschmidt regarding Emilie's conditions. The letter states in relevant part:

> My patient Emilie Altemose [the plaintiff] has severe chemical sensitivities. As a result of chronic mold and turpentine exposure in her house, to which she is very reactive, it was necessary for her to move out of her residence, where her husband worked as an artist, using the turpentine. The house is an old one, and thus is moldy. At present, in her current state of health, it is impossible for her to return to her house.
>
> She becomes light headed, short of breath, confused, unable to concentrate and severely depressed on exposure to chemicals. At present she is using portable oxygen periodically to relieve her symptoms, as well as receiving intravenous injections of vitamins and minerals. Because of her chemical sensitivity, she is unable to work or continue her seminars at Radcliffe at this time.
>
> \*      \*      \*      \*      \*      \*

*Id.* at Exh. J.

According to the medical report of a second physician, Robert Sampson, M.D., to whom the plaintiff was referred for psychiatric evaluation, Emilie was treated by Dr. Englender since November 1991 for "extreme sensitivity to various chemicals." *Id.* at Exh. K. Another letter dated November 14, 1995 by a third physician, James P. Doyle, D.O., who treated her from 1986 until 1989, noted that the plaintiff was not responding to therapy and as a result, she was referred elsewhere for "MCS therapy." Based on the totality of this evidence, which the plaintiff has not refuted, the Court finds that Emilie's claims accrued prior to June 2, 1992 as a matter of law and the defendant's motion for summary judgment based on the statute of limitations dismissing the Complaint is granted. This is so whether the

Court applies a "symptoms," "diagnosis" or "cause of the injuries" approach.

■ In reaching this conclusion, the Court notes the plaintiff's attempt to create an issue of fact based on two diagnoses of "Organic Brain Syndrome" and "Toxic Encephalopathy" made in 1994. Emilie contends that under New York's "second injury rule," the discovery of these illnesses is sufficient to preclude summary judgment.

■ In recent years, the New York courts have recognized the "two injury rule" which provides that "[w]here the statute of limitations has run on one exposure-related medical problem, a later medical problem that is 'separate and distinct' is still actionable under New York [law]." *Braune,* 895 F.Supp. at 555–56, citing, *Fusaro v. Porter–Hayden Co.,* 145 Misc.2d 911, 915, 548 N.Y.S.2d 856 (N.Y.Cty.1989), *aff'd,* 170 A.D.2d 239, 565 N.Y.S.2d 357 (1st Dep't 1991); *see also Griffin,* 74 F.3d at 40 (applying two injury rule but finding that the plaintiff's two injuries were related and therefore time barred); *Sweeney,* 210 A.D.2d at 865–66, 621 N.Y.S.2d at 133 (same). Under the two injury rule, "diseases that share a common cause may nonetheless be held separate and distinct where their biological manifestations are different and where the presence of one is not necessarily a predicate for the other's development." *Braune,* 895 F.Supp. at 555–56, citing, *Fusaro,* 548 N.Y.S.2d at 859.

The Court is not persuaded by the plaintiff's argument for two reasons. Initially, the Court recognizes that these new illnesses were not addressed in a timely fashion, either in the Complaint, or in any submissions prior to the defendant's motion. Rather, the existence of the alleged Organic Brain Syndrome and Toxic Encephalopathy are raised for the first time in the plaintiff's response papers. In the Court's view such allegations would require amendment of the complaint, a motion which has not been made, and which the Court may not be inclined to grant at this late stage. *See, e.g., Reisner v. General Motors Corp.,* 511 F.Supp. 1167, 1172 (S.D.N.Y. 1981), *aff'd,* 671 F.2d 91 (2d Cir.), *cert. denied,* 459 U.S. 858, 103 S.Ct. 130, 74 L.Ed.2d 112 (1982) (prohibiting a plaintiff from amending the complaint after discovery was concluded and a summary judgment motion had been prepared).

Further, even assuming that the Court considered these late allegations, the plaintiff offers no evidence in support of her claim that the diagnoses of Organic Brain Syndrome and Toxic Encephalopathy were the result of a second injury. Indeed, according to the plaintiff's own definitions, both MCS and Organic Brain Syndrome relate to the brain and nervous system. Her definition of Toxic Encephalopathy discusses only "lesions" on an unidentified portion of the body. Nevertheless, Emilie argues only that because MCS is difficult to define, "[t]here is no evidence that MCS might resolve or progress into either injury." In the Court's view, such allegations, unsupported by evidence that the two sets of injuries are unrelated, are insufficient to prevent summary judgment under the facts of this case. *See Sweeney,* 210 A.D.2d at 866, 621 N.Y.S.2d at 133 (granting summary judgment where "there is no evidence that the latter [injuries] were caused by a separate and distinct disease process from the former").

2. *Choice of law and statute of limitations*

■ The Court further recognizes that the plaintiff, in her opposition papers, raises a choice of law issue in an effort to defeat the defendant's motion. In the exercise of its diversity jurisdiction, a federal court applies the substantive law of the forum state on outcome determinative issues, *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), including the forum state's approach to choice of law problems, *Klaxon v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941), statute of limitations, *see Guaranty Trust Co. v. York,* 326 U.S. 99, 109–11, 65 S.Ct. 1464, 1469–71, 89 L.Ed. 2079 (1945), and borrowing statute. *See Block v. First Blood Assocs.,* 988 F.2d 344, 349 (2d Cir.1993).

■ Under New York's borrowing statute as set forth in CPLR § 202,

An action based upon a cause of action accruing without the state cannot be commenced after the expiration of the time limited by the laws of either the state or

the place without the state where the cause of action accrued, except that where the cause of action accrued in favor of a resident of the state the time limited by the laws of the state shall apply.

"[I]n actions brought by nonresidents, the shorter of the New York statute of limitations and that of the state 'where the cause of action accrued' applies." *Braune,* 895 F.Supp. at 557. However, determining the place of accrual is not a simple task. *See Braune,* 895 F.Supp. at 557–65 (engaging in a comprehensive analysis of the law to be applied under New York's borrowing statute). For example, in *Braune,* Judge Weinstein concluded that the date of accrual in DES cases is "the point where the injury is manifested." *Id.* at 562. In *Scalone v. Celotex Corp.,* 718 F.Supp. 215 (S.D.N.Y.1989), *aff'd without op.,* 923 F.2d 843 (2d Cir.1990), the place of exposure to asbestos governed the place of accrual analysis for borrowing statute purposes.

Nevertheless, even after acknowledging that the determination of when and where a cause of action accrues is often problematic, contrary to the plaintiff's assertion that such an analysis "will have to wait until another day," Pl. Mem of Law at 2, quoting, *Braune,* 895 F.Supp. at 564, the Court has little difficulty determining that here, the plaintiff's claims, based on either an exposure or manifestation analysis, accrued in New York. As set forth above, Emilie was aware of both her ailments and their alleged cause, namely her ex-husband's paints and other characteristics of the marital domicile, not only prior to June 2, 1992, but even before she moved from Southampton, Long Island to Massachusetts. In her Complaint Emilie admits to suffering from "eye irritations, recurrent rashes, severe fatigue, recurrent vaginal candidiases, cognitive dysfunction, with general depression and malaise, cause unknown," all while living in Southampton until 1989. In addition, she admits to purchasing and using a number of special air filters, vacuum cleaners and dehumidifiers to correct the effects her home in Southampton was having on her health. In her September 16, 1995 letter to the Attorney Disciplinary Committee Emilie states that the Southampton residence was "toxic" from 1986 to 1989 and reiterated this point in her September 27, 1996 deposition. Given the totality of this evidence, the Court finds that, for choice of law purposes, her claims arose within the State of New York, and as a result, New York law governs.

### 3. *Strict liability*

Hildreth also moves to dismiss his former wife's strict liability claim for failure to state a cause of action for which relief can be granted. Although the Court must grant the defendant's motion on statute of limitations grounds, this alternative argument will be addressed briefly to complete the record.

With respect to imposing strict liability, the New York Court of Appeals has recognized,

> the six criteria listed in the Restatement of Torts Second (§ 520): "(a) existence of a high degree of risk of some harm to the person, land or chattels of others; (b) likelihood that the harm that results from it will be great; (c) inability to eliminate the risk by the exercise of reasonable care; (d) extent to which the activity is not a matter of common usage; (e) inappropriateness of the activity to the place where it is carried on; and (f) extent to which its value to the community is outweighed by its dangerous attributes."

*Doundoulakis v. Town of Hempstead,* 42 N.Y.2d 440, 448, 398 N.Y.S.2d 401, 404, 368 N.E.2d 24, 27 (1977).

Applying this standard and these elements, the Court finds that summary judgment is appropriate as a result of the plaintiff's inability to establish a claim for ultrahazardous activity. Emilie has failed to demonstrate an "inability to eliminate the risk by the exercise of reasonable care," that the activity in engaged in, namely painting in one's house, "is not a matter of common usage," or that such activity is "inappropriate," as a matter of law. Accordingly, the plaintiff's alternative claim for strict liability based on ultrahazardous activity would be dismissed even if the claim were not time barred. *See, e.g., June v. Laris,* 205 A.D.2d 166, 618 N.Y.S.2d 138, 140 (3d Dep't 1994) (holding that although spraying of pesticides poses some risk if done incorrectly, it does not rise to the lev-

el of ultrahazardous activity); *DeFoe Corp. v. Semi–Alloys, Inc.*, 156 A.D.2d 634, 549 N.Y.S.2d 133 (2d Dep't 1989) (holding that although sodium hydroxide is an "active caustic chemical," the plaintiff's failure to satisfy the criteria set forth in *Doundoulakis* made dismissal of the complaint after a nonjury trial appropriate).

### III. *Conclusion*

Having reviewed the parties' submissions, and heard oral argument, and for the reasons set forth above, it is hereby

ORDERED, that the defendant's motion for summary judgment pursuant to Fed. R.Civ.P. 56, dismissing the Complaint, is granted; and it is further

ORDERED, that the Clerk of the Court is directed to close this case.

SO ORDERED.